# *INDIANA COMMERCIAL COURT*

| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF ALLEN | ) | CAUSE NO. |

| | |
|---|---|
| PETROLEUM TRADERS CORPORATION, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MIKON LOGISTICS AND | ) |
| TRANSPORTATION, LLC, | ) |
| MIKON ENERGY, LLC, and | ) |
| DANIEL GUERRERO, JR., | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

COMES NOW the Plaintiff, Petroleum Traders Corporation, by counsel, Burt, Blee, Dixon, Sutton & Bloom, LLP, and for its Complaint against the Defendants, Mikon Logistics and Transportation, LLC, Mikon Energy, LLC, and Daniel Guerrero, Jr., jointly and severally, hereby alleges and states as follows:

## The Parties

1.     Plaintiff, Petroleum Traders Corporation ("PTC"), is a for-profit corporation organized and existing under the laws of the State of Indiana, with its principal place of business located within Allen County, Indiana.

2.     Defendant, Mikon Logistics and Transportation, LLC ("Mikon L&T"), is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business being 7650 County Road 48, Suite D, Rosharon, Texas 77583-3840, and its Registered Agent being Sewell Legal Practice, P.C., 24800 Interstate 45 North, Suite 324, Spring, Texas 77386.

3.     Defendant, Mikon Energy, LLC ("Mikon Energy"), is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business being 7650 County Road 48, Suite D, Rosharon, Texas 77583-3840, and its Registered Agent being Sewell Legal Practice, P.C., 24800 Interstate 45 North, Suite 324, Spring, Texas 77386.

4.     Defendant, Daniel Guerrero, Jr. ("Mr. Guerrero"), upon information and belief, is an individual over the age of eighteen (18) years and is an owner, member, manager and/or officer of both Mikon L&T and Mikon Energy.

**Complaint Page 2 of 22**

5.    Upon information and belief, Mr. Guerrero's primary place of employment is located at 7650 County Road 48, Suite D, Rosharon, Texas 77583-3840.

### Jurisdiction

6.    Pursuant to a Carrier Application Form for Petroleum Traders Corporation between PTC and Mikon L&T (see Exhibit "A"), PTC and Mikon L&T agreed that Indiana has jurisdiction over the parties, their contracts, and this matter, and further agreed that the exclusive venue for this litigation is Allen County, Indiana.

7.    Pursuant to a Carrier Agreement between PTC and Mikon L&T (See Exhibit "B"), PTC and Mikon L&T agreed that Indiana has jurisdiction over the parties, their contracts, and this matter, and further agreed that the exclusive venue for this litigation is Allen County, Indiana.

8.    Pursuant to a Prepayment Agreement for PTC between PTC and Mikon Energy (See Exhibit "C"), PTC and Mikon Energy agreed that Indiana has jurisdiction over the parties, their contracts, and this matter, and further agreed that the exclusive venue for this litigation is Allen County, Indiana.

9.    This Court has jurisdiction over this matter and the parties hereto.

10.    Venue is proper in this Court pursuant to the Indiana Rules of Trial Procedure, Trial Rule 75.

11.    Venue is preferred in this Court pursuant to the Indiana Rules of Trial Procedure, Trial Rule 75(A).

### General Allegations

12.    PTC is the largest pure wholesale fuel supplier within the United States offering bulk fuel and secured supply and delivery of fuel.

13.    Mikon L&T and Mikon Energy are wholesale fuel distributors within the State of Texas.

14.    On or about September 14, 2021, Mikon L&T provided PTC with a Carrier Application Form for Petroleum Traders Corporation (the "Carrier App"). (A redacted copy of the Carrier App is attached hereto and incorporated herein as Exhibit "A").[1]

15.    The Carrier App set forth terms by which PTC would agree to extend credit to Mikon L&T.

16.    PTC accepted Mikon L&T's Carrier App.

---

[1] Pursuant to Access to Court Records Rule 5(C), personal information has been redacted in certain Exhibits attached to this Complaint.

17.    Through the terms of the Carrier App, payment on any amounts due by Mikon L&T was to be made with a term of Net 10 days, with finance charges accruing at a rate of eighteen percent (18%) per annum thereafter.

18.    Pursuant to the Carrier App, Mikon L&T also agreed to reimburse PTC for any and all costs of collection relating to unpaid amounts owed by Mikon L&T, including, but not limited to, reasonable attorney's fees.

19.    In addition to the Carrier App, on September 14, 2021, Mikon L&T entered into a Carrier Agreement with PTC (the "Carrier Agreement"). (A true and accurate copy of the Carrier Agreement is attached hereto and incorporated herein as Exhibit "B").

20.    The Carrier Agreement set forth the terms by which Mikon L&T would purchase wholesale fuel supplied by PTC and/or otherwise transport fuel for the benefit of PTC or its customers.

21.    To obtain fuel from wholesale reserves, Mikon L&T would "pull" fuel from said reserves utilizing PTC's loading account numbers when authorized.

22.    In turn, under the Carrier Agreement, Mikon L&T would then deliver the appropriately pulled fuel to customers of PTC or, otherwise, purchase said fuel directly from PTC.

23.    On five (5) separate occasions in June 2022, without authorization or justification, Mikon L&T inappropriately utilized PTC's loading account numbers to "pull" fuel from reserves.

24.    Specifically, Mikon L&T pulled $97,855.47 worth of fuel, without authorization, utilizing PTC's loading account numbers.

25.    The detail regarding the converted fuel, pulled by Mikon L&T, without authorization, and utilizing PTC's loading account numbers, is as follows:

        a.    6/1/2022 in the amount of $37,368.85;

        b.    6/8/2022 in the amount of $18,352.51;

        c.    6/9/2022 in the amount of $10,663.10;

        d.    6/14/2022 in the amount of $14,753.57; and

        e.    6/16/2022 in the amount of $16,717.44.

26.    Upon learning of Mikon L&T's tortious actions in exerting unauthorized control over fuel of PTC, PTC contacted Mikon L&T and Mr. Guerrero.

27.    On behalf of Mikon L&T, in several recorded phone calls, Mr. Guerrero admitted the inappropriate and unauthorized "pull" of PTC's fuel and requested that PTC bill Mikon Energy for the fuel.

28.    As a result of Mikon L&T's inappropriate pull of PTC's fuel, Mikon Energy, a separate, but related, entity, then entered into a second and separate Repayment Agreement to obligate itself, as a second and distinct entity and at the direction of Mr. Guerrero, for payment to PTC for the inappropriate pull of PTC fuel (the "Repayment Agreement"). (A true and accurate copy of the Repayment Agreement is attached hereto and incorporated herein as Exhibit "C").

29.    Pursuant to the terms of the Repayment Agreement, Mikon Energy and PTC agreed that payment would be made by Mikon Energy totaling $98,641.67, with said repayment being made through four (4) weekly installments, each in the amount of $19,728.33, and one final installment of $19,728.35 due on September 17, 2022.

30.    The aforementioned installments were to commence August 5, 2022.

31.    Mikon Energy did provide the initial payment of $19,728.33 on or about August 5, 2022.

32.    On or about August 12, 2022, Mikon Energy then purported to make the second payment under the Repayment Agreement.

33.    However, the check provided to PTC by Mikon Energy for the second payment, in the amount of $19,728.33, was returned by reason that said check was drawn on an account with insufficient funds. (See redacted JP Morgan Chase report date 8-16-2022 attached hereto and incorporated herein as Exhibit "D").

34.    Despite repeated request and demand, Mikon L&T, Mikon Energy, and Mr. Guerrero have failed and refused to make any additional payment to PTC for the converted fuel.

35.    Taking into account the single payment made by Mikon Energy on or about August 5, 2022, the principal value owed for the fuel converted from PTC is $78,913.33.

## COUNT I – BREACH OF CONTRACT – MIKON LOGISTICS AND TRANSPORTATION, LLC

36.    PTC hereby reincorporates by reference rhetorical paragraphs 1 through 35 of its Complaint as if fully set forth herein.

37.    Pursuant to terms of the Carrier App and the Carrier Agreement, Mikon L&T was to provide payment to PTC for any and all fuel pulled utilizing PTC's loading account numbers.

38.    Pursuant to the Carrier Agreement, Mikon L&T is also responsible to provide payment to PTC for the cost of any fuel pulled using

PTC's loading account number without PTC's direction, plus $.04 per gallon, plus any applicable taxes or fees.

39.    As previously alleged herein, taking into account the single payment made by Mikon Energy, the remaining principal amount owed for the converted fuel is $78,913.33.

40.    Pursuant to the Carrier App, Mikon L&T additionally agreed that interest accrues at eighteen percent (18%) per annum on any and all unpaid amounts.

41.    Pursuant to the Carrier App and the Carrier Agreement, Mikon L&T additionally agreed to reimburse PTC for any and all costs and expenses incurred by reason of Mikon L&T's failure to provide payment for amounts due thereunder including, but in no way limited to, reasonable attorney's fees.

WHEREFORE, Petroleum Trader's Corporation, hereby respectfully requests that this honorable Court enter Judgment in its favor and against the Defendant, Mikon L&T, LLC, in the principle sum of $78,913.33, by reason of Mikon L&T's breach of the Carrier Agreement, for a charge equal to $.04 per gallon of fuel converted, plus any applicable taxes or fees, for interest accruing thereon from June 26, 2022, through the date of Judgment,

at a rate of eighteen percent (18%) per annum, for any and all costs and expenses relating to Mikon L&T's failure to provide payment including, but in no way limited to, reimbursement of PTC's attorney's fees, for any and all other contractual, direct, incidental, and/or consequential damages arising out of Mikon L&T's breach of the Carrier Agreement and/or of the Carrier App, and for any and all other relief that this Court may deem to be just and proper in the premises.

## **COUNT II – BREACH OF CONTRACT – MIKON ENERGY, LLC**

42.    PTC hereby reincorporates by reference rhetorical paragraphs 1 through 41 of its Complaint as if fully set forth herein.

43.    As previously set forth and alleged herein, Mikon Energy, through the Repayment Agreement, agreed to pay PTC the total amount of $98,641.67 for the fuel converted by Mikon L&T through installments, beginning August 5, 2022.

44.    However, again as previously alleged herein, Mikon Energy only made the first of the installment payments under the Repayment Agreement, leaving a principle amount unpaid thereunder of $78,913.33.

45.    Pursuant to the terms of the Repayment Agreement, interest accrues on all unpaid amounts at a rate of eighteen percent (18%) per annum.

46.    In addition, pursuant to the terms of the Repayment Agreement, Mikon Energy agreed to reimburse PTC for any and all costs and expenses relating to Mikon Energy's failure to provide payment under the Repayment Agreement including, but in no way limited to, reimbursement for any and all attorney's fees and legal expenses.

WHEREFORE, Plaintiff, Petroleum Traders Corporation, hereby respectfully requests that this honorable Court enter Judgment in its favor and against the Defendant, Mikon Energy, LLC, in the principle sum of $78,913.33, with interest accruing thereon at a rate of eighteen percent (18%) per annum, as well as for any and all other contractual, direct, incidental and/or consequential damages arising out of Mikon Energy's breach of the Repayment Agreement, for any and all costs and expenses arising from this matter including, but not limited to, reimbursement of PTC's reasonable attorney's fees, costs of this action, and for any and all other relief that this Court may deem to be just and proper in the premises.

**Complaint Page 11 of 22**

## <u>COUNT III – NSF CHECK</u>

47.    PTC hereby reincorporates by reference rhetorical paragraphs 1 through 46 of its Complaint as if fully set forth herein.

48.    As previously set forth and alleged, on or about August 12, 2022, in purported accordance with the Repayment Agreement, Mikon Energy tendered a second check in the amount of $19,728.34 to PTC.

49.    The aforementioned second check from Mikon Energy was drawn on an account that did not have sufficient funds to cover said check. (See Ex. "D").

50.    Despite repeated request and demand, Mikon Energy has failed and refused to provide payment to PTC for the amounts still owed by reason of the bad check.

51.    The actions of Mikon Energy, and Mr. Guerrero, in issuing and delivering a check on an account with insufficient funds for said check to be paid or honored is a violation of Indiana Code §35-43-5-5.

52.    The check issued on an insufficient account was caused to be issued by Mr. Guerrero individually.

53.    Pursuant to Indiana Code §34-24-3-1, PTC is entitled to damages equal to three (3) times the face of the check, $59,185.02.

54.    PTC is also entitled to the recovery of its costs and expenses, including reasonable attorney's fees, incurred in collecting the amounts owed by Mikon Energy arising from the bad check under Indiana Code §3424-3-1.

WHEREFORE, Plaintiff, Petroleum Traders Corporation, hereby respectfully requests that this honorable Court enter Judgment in its favor and against the Defendants, Mikon Energy, LLC and Daniel Guerrero, Jr., jointly and severally, in the principle sum of $59,185.02, with interest accruing thereon at a rate of eighteen percent (18%) per annum, as well as for any and all other contractual, direct, incidental and/or consequential damages arising out of Mikon Energy's and Mr. Guerrero's delivering the NSF check, for any and all costs and expenses arising from this matter including, but not limited to, reimbursement of PTC's reasonable attorney's fees, costs of this action, and for any and all other relief that this Court may deem to be just and proper in the premises

## COUNT IV – TORTIOUS CONVERSION

55.    PTC hereby reincorporates by reference rhetorical paragraphs 1 through 54 of its Complaint as if fully set forth herein.

**Complaint Page 13 of 22**

56.   As set forth throughout this Complaint, Mikon L&T and Mr. Guerrero misappropriated the goods and property of PTC in the form of fuel for Mikon L&T's own use and benefit.

57.   Mikon L&T and Mr. Guerrero have, at all times relevant, been aware that they were exercising dominion and control over the property of PTC, in exclusion and defiance of the rights of PTC.

58.   Mr. Guerrero, in turn, through Mikon Energy, knowingly delayed collection relating to the converted petroleum by entering into the Repayment Agreement with full knowledge that Mikon Energy would not abide by the terms thereof.

59.   The actions of Mikon L&T and Mr. Guerrero, as set forth and alleged throughout this Complaint, are such that Mikon L&T and Mr. Guerrero, have acted with malice, fraud, gross negligence, and oppressiveness, which was not the result of any mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, rendering punitive damages appropriate.

60.   Mr. Guerrero is personally liable for the tortious conversion of Mikon L&T by reason of his personal participation in said conversion.

61.   The actions of Mikon L&T and Mr. Guerrero, as alleged throughout this Complaint, have proximately caused damage to PTC.

WHEREFORE, Plaintiff, Petroleum Traders Corporation, hereby respectfully requests that this honorable Court enter Judgment in its favor and against the Defendants, Mikon Logistics and Transportation, LLC and Daniel Guerrero, Jr., jointly and severally, for any and all direct, incidental and/or consequent damages arising out of the Defendants' actions as alleged throughout this Complaint, treble damages, punitive damages, reasonable attorney's fees associated with this action, any and all costs associated with this action, and for any and all other relief that this Court may deem to be just and proper in the premises.

## COUNT V – STATUTORY THEFT AND CONVERSION

62.   PTC hereby reincorporates by reference rhetorical paragraphs 1 through 61 of its Complaint as if fully set forth herein.

63.   As set forth throughout this Complaint, Mikon L&T and Mr. Guerrero have knowingly and intentionally exerted unauthorized control over the property of PTC with the intent to deprive PTC of said property.

64.    The actions of Mikon L&T and Mr. Guerrero, as set forth and alleged throughout this Complaint, constitute violations of both Indiana Code §35-43-4-2 and Indiana Code §35-43-4-3.

65.    Pursuant to Indiana Code §34-24-3-1, by reason of Mikon L&T's and Mr. Guerrero's violation of Indiana Code §35-43-4-2, and Indiana Code §35-43-4-3, Mikon L&T and Mr. Guerrero are liable in a civil suit for actual damages, as well as for treble damages, reasonable attorney's fees, and for any and all costs associated with this action.

66.    Mr. Guerrero is personally liable for the statutory theft and conversion of Mikon L&T by reason of his personal participation in said theft and conversion.

67.    The actions of Mikon L&T and Mr. Guerrero, as alleged throughout this Complaint, have proximately caused damages to PTC.

WHEREFORE, Plaintiff, Petroleum Traders Corporation, hereby respectfully requests that this honorable Court enter Judgment in its favor and against the Defendants, Mikon Logistics and Transportation, LLC and Daniel Guerrero, Jr., jointly and severally, in the amount of $236,739.99 in actual and treble damages, for any and all other direct, incidental and/or consequential damages arising out of the actions of Mikon Logistics and

Transportation, LLC and/or Daniel Guerrero, Jr., as alleged throughout this Complaint, punitive damages, reasonable attorney's fees and costs associated with this action as made appropriate by Indiana Code §34-24-31, and for any and all other relief that this Court may deem to be just and proper in the premises.

## COUNT VI – COMMON LAW FRAUD

68.    PTC hereby reincorporates by reference rhetorical paragraphs 1 through 67 of its Complaint as if fully set forth herein.

69.    As set forth and alleged throughout this Complaint, Mikon Energy, by and through Mr. Guerrero, represented to PTC that Mikon Energy would provide payment to PTC for the fuel that was unlawfully converted by Mikon L&T.

70.    As a result of those representations, PTC did enter into the written Repayment Agreement with Mikon Energy.

71.    In further reliance upon those representations, PTC delayed in pursuing any and all legal remedies it had with regard to the converted fuel, including repossession thereof and/or addressing the conversion of PTC's fuel with any customers of Mikon L&T and/or Mikon Energy that received the converted fuel.

72.    The representations of Mikon Energy and Mr. Guerrero in negotiating, and entering into, the Repayment Agreement, were entirely false at the time that Mikon Energy and Mr. Guerrero made those representations as those representations were solely presented to delay and encumber PTC and the exercise of its rights.

73.    The misrepresentations made by Mikon Energy and Mr. Guerrero constitute material misrepresentations of past and existing fact.

74.    At the time Mikon Energy and Mr. Guerrero made the misrepresentations, Mikon Energy and Mr. Guerrero knew said representations to be false.

75.    The aforementioned misrepresentations by Mikon Energy and Mr. Guerrero were made with the intent to deceive PTC.

76.    In reliance upon the misrepresentations made by Mikon Energy and Mr. Guerrero, PTC did delay in pursuing its rights with regard to the converted fuel and/or with regard to the customers of Mikon L&T that received the converted fuel.

77.    As a result of the misrepresentations made by Mikon Energy and Mr. Guerrero, PTC has suffered in that it has now been unable to retrieve its fuel with a value of $78,913.33.

78.    The actions of Mikon Energy and Mr. Guerrero, as alleged throughout this Complaint, are such that Mikon Energy and Mr. Guerrero have acted with malice, fraud, gross negligence, and oppressiveness, which was not the result of any mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, rendering punitive damages appropriate.

79.    Mr. Guerrero is personally liable for the fraud of Mikon Energy by reason of his personal participation in said fraud.

80.    The actions of Mikon Energy and Mr. Guerrero as alleged throughout this Complaint have proximately caused damages to PTC.

WHEREFORE, Plaintiff, Petroleum Traders Corporation, hereby respectfully requests that this honorable Court enter Judgment in its favor and against the Defendants, Mikon Energy, LLC and Daniel Guerrero, Jr., jointly and severally, for any and all direct, incidental and/or consequential damages arising out of Mikon Energy, LLC's and Daniel Guerrero, Jr.'s actions as alleged throughout this Complaint, treble damages, punitive damages, reasonable attorney's fees associated with this action, any and all costs associated with this action, and for any and all other relief that this Court may deem to be just and proper in the premises.

## COUNT VII – STATUTORY DECEPTION

81.    PTC hereby reincorporates by reference rhetorical paragraphs 1 through 80 of its Complaint as if fully set forth herein.

82.    As previously set forth herein, PTC entrusted Mikon Energy to provide payment under the terms of the Repayment Agreement and, in exchange, held off on pursuing its rights with regard to possession of the fuel that had been converted by Mikon L&T.

83.    Mikon Energy and Mr. Guerrero knowingly or intentionally made false or misleading written statements through the Repayment Agreement, and relating to the Repayment Agreement, with the intent to obtain and retain the converted fuel.

84.    Mikon Energy and Mr. Guerrero misapplied entrusted property knowing that said actions were unlawful or that said actions involved the substantial risk of loss or detriment to PTC.

85.    The actions of Mikon Energy and Mr. Guerrero constitute violations of Indiana Code §35-43-5-3.

86.    Pursuant to Indiana Code §34-24-3-1, by reason of Mikon Energy's and Mr. Guerrero's actions as alleged herein, Mikon Energy and Mr. Guerrero are liable in a civil suit for actual damages, as well as for treble

damages, reasonable attorney's fees, and for any and all other costs associated with this action.

87.    The actions of Mikon Energy and Mr. Guerrero, as alleged throughout this Complaint, have proximately caused damages to PTC.

88.    Mr. Guerrero is personally liable for the statutory deception of Mikon Energy by reason of his personal participation in said deception.

WHEREFORE, Plaintiff, Petroleum Traders Corporation, hereby respectfully requests that this honorable Court enter Judgment in its favor and against the Defendants, Mikon Energy, LLC and Daniel Guerrero, Jr., jointly and severally, in the amount of $236,739.99 in actual and treble damages, for any and all other direct, incidental and/or consequential damages arising out of the actions of Mikon Energy, LLC and/or Daniel Guerrero, Jr., as alleged throughout this Complaint, punitive damages, reasonable attorney's fees and costs associated with this action as made appropriate by Indiana Code §34-24-3-1, and for any and all other relief that this Court may deem to be just and proper in the premises.

Respectfully submitted,

BURT, BLEE, DIXON, SUTTON & BLOOM, LLP


/s/Jeremy J. Grogg
Jeremy J. Grogg, #24206-02
200 East Main Street, Suite 1000
Fort Wayne, IN 46802
Telephone:  (260) 426-1300
Facsimile: (260) 422-2722

**02D02-2210-PL-000324**

Filed: 10/10/2022 3:56 PM
Clerk

Allen Superior Court

Allen County, Indiana
BB

USDC IN/ND case 1:22-cv-00400-HAB-SLC document 4    filed 10/10/22    page 23 of 31

EXHIBIT "A"

## CARRIER APPLICATION FORM FOR PETROLEUM TRADERS CORPORATION

LEGAL COMPANY NAME: _Mikon Logistics and Transportation LLC_
ADDRESS: _7650 County Road 48, Ste D2_
CITY, STATE, ZIP: _Rosharon, Texas, 77583_
TELEPHONE #: _832-985-0258_   FAX #: _____   sales init. ____
TYPE OF BUSINESS ACTIVITY: _Transportation_
CORPORATE NET WORTH: $ _950,000_   PURCHASE ORDERS? ☑ YES ☐ NO
YEAR BUSINESS ESTABLISHED: _2018_   FEDERAL ID #: _86-171-6246_
RETAINED EARNINGS FROM PREVIOUS FISCAL YEAR: $ _____
FINANCIAL CONTACT: _Stacie Boisseau_   PHONE: _281-710-4178_

| NAME OF OWNER(S) &/OR PRINCIPAL OFFICERS | TITLE | SOCIAL SECURITY # |
|---|---|---|
| _Daniel Guerrero Sr._ | _President_ | ▮▮▮▮▮▮ |
| | | |
| | | |

BANK INFORMATION:
Name: _Amery Bank_   Contact: _713-232-6552_
Address: _1075 Augusta Drive_   Phone: _Jessica Tecson_
City _Houston_   State _Texas_   Zip _77057_
Account #: ▮▮▮▮▮▮   Comments: _____

I _Mikon Logistics & Transports_ authorize _Credit Department_ to release credit information regarding my account to Petroleum Traders Corporation. I understand that Petroleum Traders Corporation will keep this information in strict confidence.

INDUSTRY REFERENCES (please include at least one major fuel supplier):
Supplier Name: _Melzer's Fuel Service Inc_   Contact: _Rick Melzer_
Address: _P.O. Box 785995_   Phone: _800-367-0203_
City _Philidelphia_   State _PA_   Zip _19178-5995_
Account #: ▮▮▮▮▮▮   Comments: _____

Supplier Name: _Lee Oil Co Inc_   Contact: _Don Lee Jr._
Address: _1655 Bypass 35_   Phone: _281-331-3445_
City _Alvin_   State _Texas_   Zip _77512_
Account #: ▮▮▮▮▮▮   Comments: _____

I agree that if you extend credit to me, the terms will be Net 10 days unless you state otherwise in writing. I will pay a finance charge of 1 ½% per month, which will be added to my account if not paid in full by the due date. If I default in making payment or in fulfilling any terms of any contract with you, I agree to pay all costs of collection or enforcement including reasonable attorney fees. I acknowledge that I am tendering this application to you in Fort Wayne, Indiana; and any contract between us will be negotiated and effectively entered into in Fort Wayne, Indiana. Any contract between us will be interpreted in accordance with the laws of the State of Indiana, excluding its laws relating to choice of law or conflicts of law. As a material inducement to you to enter into contracts with me, I agree that any litigation arising out of or relating to any proposal I may make or any contract between us shall be brought exclusively in courts, state or federal, in Allen County, Indiana. I expressly consent to personal jurisdiction of the state and federal courts in Allen County, Indiana, and I acknowledge that any contracts between us involve significant contacts with the State of Indiana. _These provisions and acknowledgments shall be deemed incorporated by reference in any proposal I may hereafter make to you and in any contract hereafter entered into between us, except as that proposal or contract may expressly provide to the contrary._ I hereby certify that the information provided above and attached hereto is correct to the best of my knowledge.

Signature _Daniel Guerrero_   Title _President_
Type or Print Name: _Daniel Guerrero Sr._   Date: _9-14-2021_
I am signing on behalf of the company named above, and am authorized to bind the Company to the terms stated above.

Please fax completed form along with your company's latest financial or annual report to (260)432-6564 or email to credit@petroleumtraders.com

6

**02D02-2210-PL-000324**

Filed: 10/10/2022 3:56 PM
Clerk
Allen County, Indiana
BB

Allen Superior Court

EXHIBIT "B"
USDC IN/ND case 1:22-cv-00400-HAB   document 4   filed 10/10/22   page 24 of 31

# Carrier Agreement

THIS CARRIER AGREEMENT effective 14 September, 2021 by and between Petroleum Traders Corporation, an Indiana corporation, with a principal place of business at 7120 Pointe Inverness Way, Fort Wayne, IN 46804 (hereinafter referred to as "PTC") and Mikan Logistics & Transportation " with a principal place of business located at 7650 County Road 48 Ste D2 (hereinafter referred to as the "Carrier").
Rosharon O'Texas 77583

WHEREAS, PTC is a broker of fuel and desires to engage the services of Carrier to transport fuel for PTC;

WHEREAS, Carrier may be purchasing fuel for the benefit of carrier and/or for customers of PTC;

WHEREAS, Carrier is a licensed fuel carrier having the authority to transport fuel and fuel related products;

NOW, THEREFORE, in consideration of the premises and covenants set forth herein, the parties agree as follows:

1.  **INSURANCE REQUIREMENTS.** PTC expressly reserves the right to amend, append, or revise the types of insurance coverage and/or coverage limits listed in this agreement.

    a)  **Insurance Requirements:** The Carrier shall maintain insurance coverage as required by the terminal owner as well as any and all applicable Federal, State or other required regulations (as applicable). PTC shall be furnished with a Certificate of Insurance evidencing Mis-Delivery of Product, Sudden and Accidental Pollution Coverage and MCS-90 Endorsement. Carrier shall list PTC as an additional insured on the General Liability and Umbrella Liability policies. The Certificate of Insurance shall have at least USD $1,000,000.00 each occurrence for General Liability and at least USD $1,000,000.00 each occurrence for Umbrella Liability for a minimum of USD $3,000,000.00 combined between primary coverage and umbrella coverage per each occurrence. The Carrier must provide the certificate of insurance to PTC prior to performing any loading or distribution of petroleum products or before any activity related thereto on behalf of PTC. Failure to provide could result in the suspension or disabling of Carrier's loading numbers or loading privileges on behalf of PTC.

    b)  PTC must be named certificate holder and additional insured under the General Liability and Umbrella Liability policies.

    c)  Unless Carrier is exempt from workers compensation statutes, PTC requires a current certificate of insurance indicating workers compensation coverage and employees' liability coverage with at least $500,000 in limits.

    d)  The Certificate of Insurance must also include Carrier's automotive liability, general liability, employer's liability, umbrella liability, and excess liability policies.

    e)  As it relates to Automotive Liability coverage, Carrier's certificate must affirmatively state that pollution coverage is included and must also include a copy of Carrier's MCS-90 endorsement.

    f)  The Carrier is responsible for all acts of negligence on behalf of its employees and agents of Carrier, while on terminal property, enroute to the delivery location, and until such time as the product is properly unloaded in the customer's tanks and the Carrier has left the customer's property.

    g)  As applicable, any of the provisions in Section 1 (a) thru (f) will be abided by Carrier.

2.  **LIMITATIONS ON CARRIER FOR USE OF ACCOUNT NUMBERS.**

    a)  The Carrier will not pull any fuel using PTC and/or customer loading account numbers without having been directed to do so by PTC. The Carrier is financially responsible for any product pulled, using the assigned PTC and/or customer loading account numbers, issued by PTC. Carrier agrees to safeguard and keep confidential, all account information and loading numbers. Carrier may not use any issued loading numbers for any party not designated to receive. Any misappropriations must be reported to PTC within one business day. Failure to follow procedure could result in being held responsible for the market cost price of any product pulled, plus other taxes and damages that may occur.

Initial ___ Date 9/14/21
Rev. 2/21/2020

b) The Carrier is financially responsible for any product pulled using any issued loading number if the pull is not directed by PTC. In such an instance, Carrier will either arrange for correction of the error within one working day or will pay to PTC the market cost of said product plus USD $0.04 per gallon plus any applicable taxes or fees as interpreted by PTC. Pending correction of the error or pending receipt of payment by PTC of such price, Carrier agrees that PTC may withhold payments to Carrier under this or any other contract or liability. If payment of said price is not received by PTC within three working days of the Carrier's pulling such product and no other arrangements satisfactory to PTC have been made, then at the option of PTC, it may set off against any liabilities of Carrier, all amounts which PTC may owe to Carrier, whether such payments are presently due or not.

c) By signing this Agreement, Carrier accepts responsibility for loss of PTC and/or customer loading account numbers. Carrier also agrees to be responsible for any costs for replacement of lost or stolen loading numbers. Privileges to loading account information is to be considered temporary, confidential, and at the discretion of PTC. Loading privileges are subject to being revoked, but with notification to Carrier.

## 3. SOURCING PROCEDURES

a) PTC will provide sources on all orders. If a delivery is for the next day, a source will be provided in the evening. If the delivery is for early in the morning and a source is needed before evening, Dispatch must be made aware of this requirement when accepting the order. Back-up sources may be provided with the first choice source.

b) **Source outages** – In the event of a source outage, PTC's Dispatch Department must be contacted immediately for an alternate source. Dispatch will fax or email the Carrier a source change for this delivery. PTC will not pay differences in supply costs due to carriers pulling unauthorized sources or dates. Failure to obtain this source change could lead to a possible charge back.

## 4. EMERGENCY SPILL RESPONSE PLAN. First and foremost, all spills and cross drops must be reported to PTC immediately. Current emergency spill response plans are to be forwarded to PTC for file prior to performing any loading or distribution of petroleum products or any activity related thereto on behalf of PTC. Failure to respond to PTC's request could result in the suspension or disabling of Carrier's loading numbers or loading privileges on behalf of PTC.

## 5. WATER PASTE TEST. The Carrier shall, prior to depositing any fuel in a tank, complete a water paste test. If the Carrier fails to perform a water paste test and the fuel is contaminated because of water in the tank, the Carrier will be responsible to pay all the costs incurred (including contaminated fuel and pump out costs and storage costs) for failure to complete the water paste test.

## 6. DEMURRAGE AND/OR DETENTION POLICY

a) PTC's dispatch department must be notified of loading or unloading demurrage/detention at the time the demurrage/detention is being incurred. (Carrier will use best efforts to provide PTC's dispatch department with the number of drivers in line and the number of loading racks).

b) If Carrier is at a terminal awaiting loading and anticipates the "free" loading period will expire and demurrage/detention charges will be incurred, Carrier must notify PTC's dispatch department immediately. P T C ' s dispatch department will either give another terminal point for loading or will have the Carrier stay and accrue demurrage charges. After the Carrier is loaded, he must contact PT Dispatch for an authorization number. The authorization number must appear on Carrier's invoice.

c) If Carrier is at a delivery site awaiting unloading and anticipates the "free" unloading period will expire and demurrage/detention charges will be incurred, Carrier must notify PTC's dispatch immediately. P T C ' s dispatch will contact the delivery site for assistance. After the Carrier is unloaded, the Carrier must contact PTC's Dispatch for an authorization number. This authorization number must appear on your invoice.

d) In order to confirm these calls are being made to PTC's dispatch, only invoicing with authorization numbers accompanying demurrage/detention charges will be reviewed for payment.

Page 4

Initial _____ Date 9/14/21

Rev. 2/21/2020

## 7. GENERAL PROVISIONS

**a)** <u>Bills of Lading and Delivery Tickets must be e-mailed or faxed within 24 hours of accessing product, unless an alternative arrangement is in made and confirmed in writing between both parties.</u> Please e-mail to deliverydocuments@petroleumtraders.com or fax to the PTC's accounting department at 260-469-5896. Bills of lading should show the delivery account name and delivery address or PTC order number found on the delivery request faxed to your company.

**b)** **Delivery Tickets** must be signed by a customer representative and indicate stick readings before and after product delivery.

**c)** **Freight Invoicing** should be e-mailed to PTC at vendorpayable@petroleumtraders.com or faxed to 260-498-2841. This is to ensure that payment is made in a timely manner. Bill of Lading numbers, actual gallons delivered, invoice number, Customer name, date delivered and freight rates being billed need to be referenced on the invoice. Any extra charges should be listed as separate line items on the invoice. In order to make the payment process smoother, please attach the delivery ticket, bill of ladings, and any pertinent information needed to the e-mail.

**d)** **Freight Rate Changes** must be e-mailed to freightdept@petroleumtraders.com. We would appreciate a call to verify that we have received said rate changes.

**e)** **Federal Government Bills of Lading and Delivery Tickets** (all deliveries to government accounts) for PTC must state the temperature, specific gravity, net and gross gallons. If any of these items are not detailed on the bill of lading at the time of loading, the driver must go into the terminal to acquire this information and indicate all information on the delivery ticket and bill of lading. If these instructions are not followed and the customer consequently only pays gross gallons, you will be charged back the difference.

## 8. NON-WAIVER.
The failure of any party to exercise any of rights under this Agreement for a breach thereof shall not be deemed to be a waiver of such rights or a waiver of any subsequent breach.

## 9. INDEMNITY AND HOLD HARMLESS.
Carrier shall indemnify, defend, and hold harmless, PTC, its affiliated entities, officers directors, partners, agents representatives and employees and their respective heirs, successors and assigns, from any and all claims, liabilities, damages, attorney fees, and losses caused by the negligent and/or willful acts or omissions of Carrier. Notwithstanding the termination of this agreement, whether by expiration of time, by operation of law, or otherwise, the minimum limits of insurance provided for under section one (1) and two (2) of this Agreement do not operate as a limitation upon Carrier's indemnification duties under this section. The obligations to indemnify, defend, and hold harmless contained herein shall continue in full force and effect notwithstanding the termination of this agreement, whether by expiration of time, by operation of law, or otherwise.

## 10. GOVERNING LAW AND JURISDICTION.
Should any state or federal litigation arise in connection with this Agreement, all parties agree that venue and jurisdiction will commence in the courts of Fort Wayne (Allen County) Indiana. Each party expressly waives the right to a jury trial as to any issue arising out of or relating to this Agreement. Each party represents to the other that, before executing this Agreement, it has had adequate opportunity to consult with attorneys of its choice, to advise it as to the meaning and effect of the provisions of this Agreement.

## 11. COMPLIANCE WITH LAWS.
Carrier shall comply with all laws, orders, rules regulations, ordinances and other public requirements, including , but not limited to, local state and federal transportation statues, rules and regulations, applicable to its work and shall defend, indemnify, and hold harmless PTC, its affiliated entities, their officers, members, directors, partners, agents representatives, and employees and their heirs, successors and assigns from and against any and all claims, demands, obligations, causes of action and lawsuits and all liabilities, fines, judgments, penalties, costs, expenses (including the payment of attorney's fees and disbursements) and damages resulting from Carrier's failure to so comply.

## 12. RELATIONSHIP OF PARTIES.
The parties intend to create, by this Agreement, the relationship of Broker and Independent Contract Carrier and not an employer/ employee relationship. Carrier is and shall be deemed for all purposes to be an Independent Contractor, not an employee of PTC. Neither Carrier nor Carrier's employees, agents or servants, if any, are to be considered employees of PTC at any time, under any circumstance or for any purpose.

Initial _____ Date 9/14/2021
Rev. 2/21/2020

**13. SEVERABILITY.** If any term or provision of this Agreement is invalid or unenforceable under any statute, regulation, ordinance, order or other rule of law, that term or provision shall be deemed modified or deleted, but only to the extent necessary to comply with the statute, regulation, ordinance, order or rule, and remaining provisions of this Agreement shall remain in full force and effect.

**14. PTC DISPATCH CONTACT NAMES AND NUMBERS-- After hours please call: 800-348-3705 x1.**
    a)    PTC contact names and numbers – to be provided in a separate subsequent document and to be modified and updated from time to time.
    b)    Carrier contact names and numbers – must provide PTC with a listing of after-hour emergency telephone numbers. These are to be updated as required.

**15. CREDIT.** Intentionally Omitted.

The provisions and acknowledgments herein shall be deemed incorporated by reference in any proposal and/or contract made between the parties hereafter, except as that proposal or contract may expressly provide to the contrary. Carrier hereby certifies that the information provided above and attached hereto is correct to the best of their knowledge.

**THE PERSON SIGNING BELOW ACKNOWLEDGES THAT HE/SHE AGREES WITH THE TERMS ABOVE AND IS AUTHORIZED TO SIGN DOCUMENTS THAT BIND THE COMPANY.**

_Milkon Transportation & Logistics LLC_
Carrier name                      PETROLEUM TRADERS CORPORATION

_Daniel G Guerrero Sr._
Signature, Authorized Signer

_Daniel Guerrero Sr.  /President_                _____
Printed name and Title                       Signature. Authorized Signer

                                        _____
                                        Printed name and Title

Initial _DG_ Date _9/14/2021_
Rev. 2/21/2020

EXHIBIT "C"
**02D02-2210-PL-000324**
Allen Superior Court

Filed: 10/10/2022 3:56 PM
Clerk
Allen County, Indiana
BB

USDC IN/ND case 1:22-cv-00400-HAB-SLC document 4     filed 10/10/22     page 28 of 31

## Repayment Agreement

Amount: $98,641.67                                                          Date: July 19, 2022

PROMISE TO PAY. Mikon Energy, LLC, a Texas limited liability company (**"Energy"**), ~~Mikon Logistics and Transportation, LLC, a Texas limited liability company ("Logistics") and Daniel Guerrero ("Guerrero")~~ (said ~~Energy, Logistics and Guerrero are jointly, severally and collectively hereinafter~~ referred to as the **"Debtor"**), jointly and severally, hereby promise to pay to the order of Petroleum Traders Corporation, an Indiana corporation (**"PTC"**) and its successors and assigns, at places as PTC may direct, in lawful money of the United States of America, the principal sum of NINETY EIGHT THOUSAND SIX HUNDRED FORTY ONE and 67/100 DOLLARS ($98,641.67) (the **"Outstanding Amount"**) upon the terms and conditions set out below.

PAYMENT SCHEDULE. The Outstanding Amount due under this Agreement shall be due and payable in four (4) weekly installments in the amount of Nineteen Thousand Seven Hundred Twenty-Eight and 33/100 Dollars ($19,728.33) commencing on ~~July 22, 2022;~~ *August 5, 2022* and one (1) installment of Nineteen Thousand Seven Hundred Twenty-Eight and 35/100 Dollars ($19,728.35) on ~~August 19, 2022;~~ *September 9, 2022* provided that, on ~~August 19, 2022~~ *September 9, 2022* the entire Outstanding Amount of this Agreement and all other amounts outstanding under this Agreement shall be due and payable. All amounts due under this Agreement are payable in lawful money of the United States of America, in immediately available funds, via ACH, on the day of payment. On the due date of any payment due hereunder PTC shall draft the Debtor's bank account provided in an EFT Agreement. The Outstanding Amount may be prepaid at any time without penalty.

DEFAULT. Each of the following shall be deemed an "Event(s) of Default" hereunder: (i) The failure of the Debtor to make any payment due hereunder this Agreement when due; (ii) Nonperformance or breach of any obligation, promise, covenant, warranty or representation made by the Debtor under this Agreement; (iii) Debtor files a petition under federal bankruptcy laws or an involuntary petition for such federal bankruptcy proceedings is filed with respect to the Debtor and not dismissed within sixty (60) days or a trustee or receiver is appointed for the assets of the Debtor and such appointment is not dismissed within sixty (60) days; or (iv) Debtor becomes insolvent. Upon the occurrence of an Event of Default, all the indebtedness evidenced by this Agreement and remaining unpaid balance, including without limitation the entire unpaid Outstanding Amount, any accrued and unpaid interest, and all other amounts payable under this Agreement, shall, at the option of PTC and without demand or notice, become immediately due and payable, and then Debtor will pay that amount, anything contained in this Agreement to the contrary notwithstanding. All rights and remedies of PTC herein specified are cumulative and in addition to, not in limitation of, any rights and remedies which PTC may have by law or at equity. During the period of any default hereunder, the unpaid balance of the indebtedness evidenced hereby shall bear interest at the rate of eighteen percent (18%) per annum.

PTC may hire or pay someone else to help collect the indebtedness evidenced by this Agreement if Debtor does not pay any amount when due. Debtor shall pay all of PTC's attorneys' fees and PTC's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated cost-judgment collection services, and any court costs, in addition to all other sums provided by law, in connection with any Event of Default.

WAIVER. The Debtor for each itself, and their respective legal representatives, successors, and assigns, expressly waive presentment, demand, notice of dishonor, protest, notice of protest and nonpayment and notice of acceleration of the maturity of the indebtedness evidenced by this Agreement, and further agree that the holder shall have the right, without notice, to deal in any way, at any time, with the Debtor, and to grant the Debtor extensions of time for the payment of the indebtedness evidenced by this Agreement or any other indulgence or forbearance whatsoever, and may release any security for the payment of this Agreement and/or modify the terms of any agreement or instrument securing or pertaining to this Agreement without in any way affecting the liability of the Debtor hereunder or the liability of such respective legal representatives,

successors, and assigns. All sums due hereunder this Agreement shall be payable without relief from valuation and appraisement laws.

GOVERNING LAW AND VENUE. This Agreement has been delivered to PTC and accepted by PTC in the State of Indiana. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Indiana. The parties hereby agree and consent that the exclusive, proper and preferred venue of any claim or cause of action concerning this Agreement shall lie in the Allen County, Circuit or Superior Courts, Fort Wayne, Indiana, or in the United States District Court for the Northern District of Indiana (Fort Wayne Division) for purposes of disputes concerning or arising under, and enforcement of this Agreement. In the event any provision hereof is in conflict with any statute or any rule of law in the State of Indiana or is otherwise unenforceable for any reason whatsoever, then such provision shall be deemed severable from this Agreement, or enforceable to the maximum extent permitted by law, as the case may be, and the same shall not invalidate any other provisions of this Agreement.

GENERAL PROVISIONS. This Agreement is unsecured. Neither the failure nor the delay upon the part of PTC to exercise any right, power or privilege hereunder shall be considered as a waiver hereunder, and the failure on the part of PTC to exercise any right or option stated herein shall not be deemed as a waiver or act as an estoppel of the right to exercise such right or option by reason of any further, future, and/or continuing breach or default. The maker and endorsers hereof jointly and severally waive presentment for payment, notice of dishonor, notice of nonpayment of this Agreement, and diligence of collection thereof as conditions of liability under this instrument. Debtor shall execute, acknowledge and deliver, or cause to be executed, acknowledged or delivered, any and all such further assurances and other agreements or instruments, and take or cause to be taken all such other action, as shall be reasonably necessary from time to time to give full effect to this Agreement and the transactions contemplated herein. Time is of the essence of this Agreement. This Agreement may be executed in several counterparts, each of which shall be deemed an original, but together the counterparts shall constitute one and the same document. THE DEBTOR AND PTC HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.

PRIOR TO SIGNING THIS AGREEMENT, DEBTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. DEBTOR AGREES TO THE TERMS OF THE AGREEMENT AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT.

MIKON ENERGY, LLC

By: _____
        (signature)

Daniel Guerrero  –  CEO/President
Printed name and title

MIKON LOGISTICS AND TRANSPORTATION, LLC

By: _____
        (signature)

_____
Printed name and title

_____
Daniel Guerrero



## PETROLEUM TRADERS CORPORATION
### Authorization Agreement Pre-Authorizing Payment via Draft

*Amegy Bank of Texas*
Customer's Bank Name

Address

City & State

ABA Number ▮▮▮▮▮▮▮

Account Number    *Checking*
                  Account Type

*Mikon Energy LLC*
Customer's Name

*7650 - County Road 48 Ste.*
Address

*Rosharon, Texas  77583*
City & State

Customer understands that this agreement is governed by the rules of the Automated Clearing House and that Petroleum Traders can terminate or modify this agreement at any time.

Customer named above authorizes Petroleum Traders Corporation to originate electric debit entries to Customer's account as named above. Customer also authorizes above named Bank to accept and to debit the amount of such entries to Customer's account (ID # 9176955002). Such entries will be transmitted by Chase Bank on behalf of Petroleum Traders Corporation. This authority is to remain in effect until 10 days after Petroleum Traders Corporation and Bank named above have received written cancellation notice from customer and all purchases of petroleum products prior to the receipt of the cancellation have been paid.

Customer understands that a debit entry will only be accepted if sufficient funds are available in Customer's account. In the event an entry is not accepted for any reason, the Customer is to notify Petroleum Traders Corporation by telephone at the number shown below by the close of the banking day on which the entry is presented.

### **Customer Authorization**

**The person signing below acknowledges that he/she is authorized to sign documents legally binding the company.**

Authorized Signature & Title

*Daniel Guerrero Jr.*
Print Name

*281-723-9948*
Customer's Phone Number

Customer Fax Number

*7/10/22*
Date Signed

Phone: 800.348.3705
Petroleum Traders Corporation
P.O. Box 2357
Fort Wayne, IN 46801-2357

Questions or concerns regarding future drafts please contact:
Mechelle Bryant
mbryant@petroleumtraders.com
Direct Phone: 260-207-6372

**02D02-2210-PL-000324**

**Filed: 10/10/2022 3:56 PM**
**Clerk**
**Allen County, Indiana**
**BB**

EXHIBIT "D"

USDC IN/ND case 1:22-cv-00400-HAB-SLC   document 4    filed 10/10/22    page 31 of 31

Allen Superior Court 2

JPMorgan Chase
Any questions, contact ACH Customer Service at (813)432-3700
Report Date: 08/16/22

RETURNED DEBITS POSTED:
ORIG NAME:   J.P. MORGAN ACCESS          COMPANY ID: ▆▆▆▆▆
ORIG EFFECTIVE DATE: 08/12/22            BATCH DESCRIPTION: CONS COLL

RECV NAME:      MIKON ENERGY LLC         TRANSACTION: RETURN
RECV ACCT:      ▆▆▆▆▆▆▆                  ACCT TYPE:  CHECKING
RECV R/T:       ▆▆▆▆▆▆▆                  AMOUNT:     $19,728.34
RECV ID:        ▆▆▆▆                     RETURN CODE: R01-INSUFFICIENT FUNDS
BANK ORIG TRACE#: ▆▆▆▆▆▆▆                CO ORIG TRACE#: ▆▆▆▆▆▆▆
ADDENDA:
CORRECTION INFO:

```
                        GRAND TOTALS POSTED
            ACCOUNT: ▆▆▆▆▆▆
REPORT/POSTING DATE: 08/16/22
                            ITEMS              AMOUNT
RETURNED DEBITS:              1        $      19,728.34
RETURNED CREDITS:             0        $           0.00
NOTIFICATIONS OF CHANGES:     0        $           0.00
REDEPOSITS:                   0        $           0.00
```